IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:12-CV-174

| | |
|---|---|
| MARIE GRAHAM, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court on *pro se* Plaintiff Marie Graham's Motion for Summary Judgment, (Doc. 8), and Defendant Carolyn W. Colvin's Motion for Summary Judgment, (Doc. 13). For the following reasons, this Court will **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendant's Motion for Summary Judgment.

**I.   BACKGROUND OF THE LAW**

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge ("ALJ") will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three

---

[1] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

1

has been completed, but before step four is begun, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir.1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir.1976) ("We note

that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir.1982).

### III.  THE ALJ DECISION AND APPEAL

On February 3, 2009, Graham filed a Title II application for period of disability and disability insurance benefits. (Tr. 15). Graham alleged that her disability began on March 29, 2007. (*Id.*). Her claim was initially denied on June 17, 2009. (*Id.*). She then requested a hearing, received one, and was again denied on December 28, 2010. At the hearing, her attorney represented that the "medical record was 'complete.'" (*Id.*).

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from March 29, 2007 to September 30, 2007. (*Id.* at 17). Notably, the ALJ found that Graham's earnings records establish that her date last insured ("DLI") was September 30, 2007. (*Id.* at 16). This means that Graham must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (*Id.*).

At step two, the ALJ found that Graham had a severe cervical back impairment, but declined to find that Graham had a severe tremor disorder. (*Id.* at 17). The ALJ's basis for finding that the tremor disorder was not severe was the fact that the "condition was not medically determined on and before her last date insured." (*Id.*). The ALJ noted that there were no complaints or clinical observations of tremors to Dr. Brusie. (*Id.*). Dr. Brusie was Graham's treating physician between 2002 and 2007. (*Id.*). The ALJ also discussed Dr. Drag's records. On August 1, 2007, Graham visited Dr. Drag with complaints of neck pain and headaches. (*Id.*).

3

Graham failed to mention any issues with tremors and there were no clinical observations of tremors. (*Id.* at 18). The ALJ noted that Graham reported tremor symptoms to her treating physician on March 10, 2008 but "stated that this had been only 'over the past three months.'" (*Id.*). The ALJ noted that she denied having any issues with memory, neck pain, and vertigo. (*Id.*).

At step three, the ALJ found that none of Graham's impairments or combination of impairments satisfied the Listings. (*Id.*).

The ALJ found that Graham had the RFC to perform the full range of light work as defined by 20 C.F.R. 404.1567(b). (*Id.* at 19). The ALJ considered Graham's testimony that she had to quit working during the month of March 2007 due to her neck pain and increasing tremors. The specific reason for Graham gave for terminating her employment was because "her hands were constantly shaking, she was unable to use a computer, and her voice was 'shaky.'" (*Id.*). The ALJ found that this testimony was not credible considering the objective medical evidence on record from 2007. Specifically, the ALJ found that while there was a history of disc herniation in 2002, the medical record showed substantial improvement after physical therapy and she was discharged from physical therapy after meeting all goals on December 11, 2002. (*Id.*).

The ALJ found that "the medical record does not show a 'sudden' increase in symptoms during the month of March 2007." (*Id.*). The ALJ again referenced Dr. Brusie and Dr. Drag's records to support his findings of lack of issues with tremors. The ALJ found that all reports of tremors were outside of the DLI. (*Id.*). Therefore, the ALJ found that "symptoms of 'tremors' were not identified the medical record.'" (*Id.*).

The ALJ then referenced Dr. Drag's opinion that her cervical problems were unrelated to the disc herniation that existed in 2002. (*Id.*). The ALJ stated that "there is no clinical confirmation that any disc herniations actually existed" in 2007. (*Id.*). However, the ALJ credited the claimant's complaints of neck pain by stating that it may have impeded her ability to lift and carry objects over twenty pounds. (*Id.* at 20).

At step four, the ALJ concluded that Graham could perform her prior work as a receptionist and golf pro shop manager. (*Id.* at 20). Therefore, the ALJ found that Graham was not under a disability from March 29, 2007 through September 30, 2007. (*Id.*).

Graham then appealed her denial to the Order of Appeals Council where she was denied again. (Doc. 7-3, at 7). This was the first time Graham included medical records from Lynne Kavulich, D.C. (*Id.* at 8). Kavulich's records were from the period of August 3, 2007 to August 29, 2007. (*Id.*).

## IV. PLAINTIFF'S APPEAL

Plaintiff filed the instant appeal and summary judgment motion *pro se*. The Court construes her brief to argue that (1) the ALJ erred in not finding her tremors were not severe prior to September 30, 2007, her DLI; (2) the ALJ failed to fully develop the record; (3) the ALJ improperly weighed the medical evidence by crediting Dr. Drag over Dr. Brusie; and (4) the ALJ improperly assessed her RFC.

## V. ANALYSIS

### A. The ALJ Did Not Err at Step Two

Plaintiff claims that the ALJ erred at step two in finding that her alleged tremor was not severe. Specifically, Plaintiff posits that the medical record proves that she was experiencing tremors prior to her DLI. Plaintiff claims that her reports of her tremor-related history

memorialized in her physicians' notes establish a severe finding prior to her DLI, even though the notes themselves were created after her DLI. (Doc. 8, at 2).

The severity evaluation is a "threshold screening standard to eliminate frivolous claims at an early stage in the process." *Bowen v. Yuckert*, 482 U.S. 137, 180 (1987). A "severe impairment" is an impairment or a combination of impairments that significantly limit an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Social Security Ruling[2] ("SSR") 96-3p states that:

> [A]n impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."

*See also* SSR 85-28. "Additionally, if an ailment is controlled by medication or treatment such that it does not cause work-related limitations, the ailment is not considered severe." *Clore v. Colvin*, 2:13-CV-23, 2014 WL 294640 at * 3 (W.D.N.C. Jan. 27, 2014) (citing *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Further, "[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508.

"Medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimant's DLI." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Evidence created after a claimant's DLI that permits an "inference of linkage" between a claimant's post- and pre-DLI condition "could be the 'most cogent proof' of a claimant's pre-DLI disability." *Id.* (quoting *Moore v. Finch,* 418 F.2d 1224, 1226 (4th Cir.1969)). The

---

[2] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

underlying rule is that "retrospective consideration of evidence is appropriate when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with [her] earlier symptoms.'" *Id.* (quoting *Moore*, 418 F.2d at 1226). However, where there is not sufficient evidence supporting an inference that a claimant's post-DLI assessment is linked to pre-DLI impairments, then the ALJ may properly not give the new assessment retrospective consideration. *Id.* (citing *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) (per curiam). A claimant has the burden to prove the disability existed before expiration of the DLI. *Johnson*, 434 F.3d at 655-56.

In *Bird*, the claimant did not have any medical records prior to his DLI which was March 31, 2005. *Bird*, 699 F.3d at 340. The first medical records in evidence were from June 2006, which detailed his visit to the Department of Veterans Affairs. *Id.* He was subsequently diagnosed with having Post Traumatic Stress Disorder ("PTSD") by several medical professionals. *Id.* The ALJ found that his impairment was insufficiently severe to qualify for benefits by relying, in part, on the lack of medical evidence created prior to the claimant's DLI. *Id.* Notably, "[t]he ALJ did not make a finding regarding whether Bird was disabled when he applied for Social Security disability benefits or at the time of the hearing." *Id.* The Fourth Circuit ruled that the ALJ should have given retrospective consideration to the post-DLI medical evidence. *Id.* at 341. The Fourth Circuit attached particular importance to the fact that a psychologist's report indicated that his PTSD had been ongoing since he had returned from Vietnam. *Id.* Further, another medical report recounted the current symptoms of PTSD and "placed Bird's symptoms in the context of his work and social histories, drawing a link between his current condition and his condition predating his DLI." *Id.* This evidence was corroborated by Bird and his wife's recount of their experiences with his PTSD symptoms. *Id.* In this type of

7

situation, the Fourth Circuit held that remand was required because it was an error of law to refuse to consider the properly linked post-DLI evidence. *Id.*

The ALJ herein correctly pointed out that records of both Dr. Brusie and Dr. Drag had no mention of complaints of tremors or clinical observations of tremors between the time periods of 2002 to her DLI. However, the ALJ was factually incorrect in stating that Plaintiff first reported her tremors on March 10, 2008. Secondly, the ALJ appears to have mischaracterized the evidence by stating that her symptoms had only been occurring "over the **past three months**." (Tr. 18, 19) (emphasis in original).

The record shows that Plaintiff visited Leslie Brusie multiple times in 2002-2007. It was not until after Plaintiff's DLI that Plaintiff first self-reported her tremors. On February 4, 2008, Dr. Brusie assessed Plaintiff with tremor. (Tr. 209). Dr. Brusie recounted Plaintiff's report that her sister may have a neurological issue and that both of her parents and her paternal grandmother have Parkinson's. (*Id.*). Dr. Brusie's notes state "TREMOR 6 MONTHS HAS BEEN GOING ON BUT NOW ALL THE TIME . . . worse at rest, worse with action, worsening, hand." (*Id.*). Dr. Brusie then referred Plaintiff to Dr. Koszer, M.D. (Tr. 210). The March 10, 2008 report from Dr. Koszer, states that "[s]he complains of tremor over the past 20 years. She notes it is worse over the past 3 months." (Tr. 269). Dr. Koszer diagnosed Plaintiff with "essential tremor" that day. (*Id.*).

Here, retrospective consideration was not necessary because the record persuasively rules out any linkage between Plaintiff's post-DLI assessments and her pre-DLI condition. Therefore, there was no error of law. The Court notes that the Plaintiff does not argue, and the record does not reflect, that there was a failure to diagnose Plaintiff's alleged tremors. Nor was there the complete lack of a medical record as present in *Bird*. Plaintiff's medical record establishes that

8

she regularly went to the doctor for treatment. Specifically, in 2007, Plaintiff's medical record demonstrates that she repeatedly sought treatment from providers when she had an issue. (*See* Tr. 168-170, 254). The completeness of her medical record demonstrates that she did not complain of tremors until after her DLI because that was when they had manifested or progressed to a degree where they would have interfered with her ability to work.[3] Further, there was no meaningful corroboration aside from her own statement that she quit work in March of 2007 due in part to her tremors.[4] None of Plaintiff's physicians offered a retrospective diagnosis or opined that her tremors existed prior to her DLI.[5] Accordingly, the record is persuasive enough to rule out linkage in this instance.

        **B.    Plaintiff's Argument Stating that the ALJ Failed to Fully Develop the Record is Rejected**.

Graham argues that the ALJ failed to fully develop the record, stating that he should have obtained Dr. Kavulich's reports.

The Fourth Circuit "has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.3d 1168, 1173 (4th Cir. 1986). However, the *Cook* case "illustrates a complete failure on the part on the part of the ALJ to explore the relevant facts and inquire into the issues" because the ALJ made a listings decision without having any evidence pertinent to the criteria of the listed

---

[3] Plaintiff currently represents to the Court that she "did not seek help for [her] tremor disorder until it became unmanageable," (Doc. 8, at 2), and where she was "at a point that [she couldn't] use a computer normally, hold objects without dropping them, and talk in an articulate manner," (Doc. 8, at 6). The Court recognizes that "[r]eviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence" *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 93 F.2d 93, 96 (4th Cir. 1991), *superseded on other grounds*, 20 C.F.R. § 404.1527. Even if the Court considered this evidence, it would only show that Plaintiff's symptoms became unmanageable after her DLI. Plaintiff argues that she did not seek help until it became unmanageable. She did not seek help until months after her DLI. Accordingly, her rationalization supports a finding that linkage does not exist in this case.
[4] The Court notes that this is inconsistent with both records assessing Plaintiff with tremors.
[5] The Court is not implying that a retrospective diagnosis is required.

9

impairment. *Hlatky v. Astrue*, No. 5:10-CV-00068-RLV, 2011 WL 6936179, at *2 (W.D.N.C. Dec. 30, 2011). The Court finds that the record was reasonably complete, and in any event, there was no error because the Appeals Council considered Dr. Kavulich's report. Moreover, Plaintiff was represented by counsel who certified that the record was complete. The ALJ was not required to act as substitute counsel in such an instance, *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) and plaintiff "b[ore] the risk of non-persuasion," *Seacrist v. Weinberger*, 538 F.2d 1054, 56 (4th Cir. 1976).

### C. Plaintiff's Argument that the ALJ Improperly Credited Dr. Drag over Dr. Brusie is Rejected.

#### 1. Standards for Weighing A Treating Physician's Opinion

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Therefore, a treating physician's opinion will not be entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record.[6] An ALJ must always give "good reasons" for the weight given or not given to a treating physician's opinions. § 404.1527(c)(2).

If a treating physician's opinion is not conclusive, the opinion must be evaluated and weighed considering (1) whether the physician has examined the claimant; (2) the length of the treatment relationship and frequency of examination; (3) the nature and extent of the treatment

---

[6] If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996); *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (holding that a treating physician's opinion need not be afforded controlling weight).

relationship; (4) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist.  20 C.F.R. § 404.1527(c).

2. Application

Plaintiff argues that it was improper for the ALJ to "weigh[] a majority if not all of his decision on what Dr. Drag had to say" and not credit Dr. Brusie.  (Doc. 8, at 4).  The Court finds that the ALJ properly examined all medical opinions in the record.

Graham testified at her hearing that she had a history of neck pain, but was able to work at a golf pro shop.  At the hearing, Graham stated that "she had to stop working in March 2007 due to neck pain and increasing tremors."  (Tr. 19).

Therefore, the ALJ looked into the medical record before him to see if there was any support for such an assertion.  Instead of refusing to credit Dr. Brusie, the ALJ went into detail analyzing Dr. Brusie's records.  (Tr. 19).  The ALJ specifically stated that

> While there is a history of a 2002 disc herniation at C6-7 which impinged on the nerve root **at that time** . . . the medical record shows substantial improvement in symptoms following physical therapy . . . all goals were met and she was discharged . . . .  The claimant was able to work many years thereafter.  The medical record does now show a "sudden" increase in symptoms during the month of March 2007.

(*Id.* at 19) (emphasis in original).  The Court has reviewed Dr. Brusie's records and finds that there was substantial evidence for the ALJ to conclude that there were no "sudden" increases depicted in Graham's symptoms during the month of March 2007.  Plaintiff points out that Dr. Brusie wrote her a letter in an attempt to excuse her from jury duty.  The letter states that "Marie Graham is under my care for back pain related to herniated discs.  She is unable to sit for more than two hours at a time."  (Tr. 198).  The Court finds that the ALJ properly disregarded this because it is inconsistent with the record as a whole.  There are no treatment records prior to the date of the letter indicating that Dr. Brusie assessed Plaintiff to develop this opinion.  Accordingly, the opinion is inconsistent with the medical record as a whole.  Therefore, there is

11

substantial evidence of to support the ALJ's finding. *Ross v. Astrue*, No. 8:06-3410-TLW-BHH, 2008 WL 701167, at *6 (D.S.C. Mar. 12, 2008). Therefore, the Court declines to grant Graham's motion for summary judgment on this ground.

>   D.  **The ALJ Had Substantial Evidence to Support a Light RFC.**

Plaintiff argues that Dr. Kavulich's records are at odds with the light RFC given by the ALJ. However, Kavulich's records only indicate that Plaintiff's degenerative disc disease in her cervical spine was at phase two and her degenerative disc disease in her lumbar spine was at phase one. (Tr. 302). Moreover, after her diagnosis, she had several findings of improvement present on August 5, 9, and 23rd of 2007. (Tr. 306). On some days she experienced tightness in her neck, (Tr. 306-07), however, this is nothing different than the "discomfort from disk impairments in the cervical spine" that the ALJ had already taken into account in his RFC analysis, (Tr. 19). Accordingly, Dr. Kavulich's records do not require finding that there was not substantial evidence supporting Plaintiff's RFC.

**IT IS, THEREFORE, ORDERED THAT**

(1) Plaintiff Marie Graham's Motion for Summary Judgment is **DENIED**; and

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment is **GRANTED**.


Signed: January 8, 2015

Richard L. Voorhees
United States District Judge